767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JOHN DEMJANJUK, A/K/A IWAN DEMJANJU, A/K/A IVAN DEMJANJUK,
DEFENDANT-APPELLANT.
 NOS. 84-3106, 85-3212
 United States Court of Appeals, Sixth Circuit.
 6/28/85
 
 N.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: KENNEDY and MILBURN, Circuit Judges; and BERTELSMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant appeals the orders of the district court denying his motions to vacate a prior judgment revoking his certificate of naturalization. Defendant argues that his motions should have been granted under Fed. R. Civ. P. 60(b) because (1) evidence used at the trial was fraudulent, and (2) witnesses called by the government in its case-in-chief have since recanted their testimony. For the reasons that follow, we affirm.
 
 
 2
 The district court judgment revoking defendant's certificate of naturalization was entered on June 23, 1981, after a five-week trial. That judgment which defendant asked the district court and this court to vacate was affirmed by this court and certiorari was denied by the Supreme Court. United States v. Demjanjuk, 518 F. Supp. 1362 (N.D. Ohio 1981), aff'd, 680 F.2d 32 (6th Cir. 1982), cert. denied, 459 U.S. 1036, 103 S. Ct. 447 (1982).
 
 
 3
 The 1981 denaturalization judgment was based on the district court's finding under a 'clear and convincing' standard that defendant had procured his citizenship by willful misrepresentations of material facts regarding the nature of his wartime activities in his application for a visa under the Displaced Persons Act of 1948. The government's evidence at trial revealed that although defendant's visa application included the representation that he was a farmer and harbor worker during World War II, he willfully concealed his service with the Nazi SS. Evidence also revealed that as a soldier in the German SS, defendant trained at the Trawniki SS Training Camp and later worked as a guard, placing prisoners in a gas chamber and, in fact, operating the machinery which gassed Jewish prisoners at the Nazi extermination camp at Treblinka, Poland.
 
 
 4
 During the original trial, the district court considered the testimony of fourteen (14) witnesses and had approximately thirty (30) exhibits before it. However, since the evidence presented at the original trial and the district court's findings of fact are set out at some length in the district court's original opinion, United States v. Demjanjuk, 518 F. Supp. 1362, it will be very briefly summarized here. With regard to defendant's presence in the SS training camp, the government introduced photographic copies of his Trawniki identification card. This identification card was kept in an archive by the U.S.S.R. but was also made available for inspection during trial. Although defendant contested the authenticity of the card, 'at no time during the entire course of the trial was any evidence introduced to substantiate [his position].' Demjanjuk, 518 F. Supp. at 1366. On the other hand, the government's evidence of authenticity was extensive. The government, for example, presented testimony from Henrich Shaefer, the paymaster of Trawniki, that he had been issued such an ID card, as were all persons training at Trawniki, and, furthermore, that the card at issue was authentic. Similarly, an expert forensic document examiner, who conducted tests on both the copies and the original, testified that the two signatures appearing on the card were those of the commandant of Trawniki and the person in charge of distributing equipment at Trawniki.
 
 
 5
 To establish defendant's participation in the death camp at Treblinka, the government presented the testimony of five (5) Jewish survivors and Otto Horn, a former SS guard. All of these witnesses identified defendant's visa photo (taken in 1951 for an application for an immigration visa) from a photo spread. Several of these same witnesses also testified to Demjanjuk's cruel treatment of prisoners as well as his operation of the motors which sent the deadly gas into the gas chambers.
 
 
 6
 In the first of the two consolidated cases now before this court, No. 84-3106, the defendant's Rule 60(b) motion was filed October 26, 1983, over two years after the district court's judgment had been entered. This motion was based on defendant's claim that Otto Horn and Henrich Shaefer had recanted their testimony. Defendant's Rule 60(b) motion in No. 85-3212, filed December 17, 1984, was premised on his allegation of improprieties in the original trial and 'new evidence.' Defendant claimed that '[e]xamination [of the Trawniki ID card] by qualified experts . . . disclosed that [it] was not only composed of different documents, but that other alterations had been made . . ..' Appellant's Brief at 5. The district court in both No. 84-3106 and No. 85-3212 went to great lengths to address each of appellant's arguments.
 
 
 7
 Having reviewed the briefs and records and after oral argument, we are unable to add to Chief Judge Battisti's well-reasoned opinion and orders. Accordingly, we AFFIRM the judgments of the district court for the reasons stated in the entered opinion and orders of the district court.
 
 
 
 *
 The Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation